UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK E. SCHAEFER,

               Plaintiff,

v.

 JOHN E. POTTER, Postmaster
General United States Postal
Service,

               Defendant.

_____/

CIVIL ACTION NO. 06-12735

DISTRICT JUDGE BERNARD A. FRIEDMAN

MAGISTRATE JUDGE DONALD A. SCHEER

## REPORT AND RECOMMENDATION

**I.**    **RECOMMENDATION:**

      I recommend that Defendant's Motion to Dismiss be granted as to the handicap discrimination/failure to accommodate claims in Counts 1 through 3 of the Complaint as well as the assault-based tort claims in Counts 4, 9 and 10. I further recommend that Defendant's Motion for Summary Judgment be granted as to the balance of the Complaint, and that Plaintiff's Complaint be dismissed.

**II.**    **REPORT**:

    **A.**    **Procedural History**

      Plaintiff's Complaint was filed on June 21, 2006. The case was referred to the magistrate judge for Report and Recommendation on August 7, 2006. On September 1, 2006, Defendant filed a Motion to Dismiss and/or for Summary Judgment. Plaintiff filed a

Response to the motion on October 6, 2006. Defendant filed a Reply Brief on October 18, 2006.[1]

**B.**   **Applicable Law and Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) provides that a Complaint must be dismissed if it fails to state a claim upon which relief may be granted. In assessing a motion to dismiss, the court "must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." Allard v. Weitzman (In Re: Delorean Motor Co), 991 F.2d 1236, 1239-40 (6th Cir. 1993) (citing Meador v. Cabinet for Human Resources, 902 F.2d 474, 475 (6th Cir.) cert. denied, 498 U.S. 867 (1990)); see also, Conley v. Gibson, 355 U.S. 41 (1957). "A complaint need not set down in detail all the particularities of a plaintiff's claim, but must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Lillard v. Shelby County Board of Education, 76 F.3d 716, 726 (6th Cir. 1996) (citations omitted).

Although the standard is liberal, it requires more than the bare assertion of legal conclusions. In Re: Delorean Motor Co., 991 F.2d at 1240; Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988). The complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Scheid, 859 F.2d at 436 (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1106 (7th Cir. 1984), cert. denied, 470 U.S. 1054 (1985)). If the

_____

[1] Plaintiff filed a Motion for Sanctions on October 6, 2006. Defendant filed a Response to the motion on October 12, 2006. The motion was denied, without oral argument, by the magistrate judge on January 11, 2007.

court considers matters outside the pleadings in connection with a defense of failure to state a claim upon which relief may be granted, the motion must be treated as one for summary judgment and disposed of as provided in Rule 56. Fed.R.Civ.P. 12(b).

Rule 56(c) of the Federal Rules of Civil Procedure provides that a motion for summary judgment will be granted when the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Celotex v. Catrett, 477 U.S. 317, 323 (1986). The court must consider all pleadings, affidavits, and admissions on file and draw all justifiable inferences in favor of the party opposing the motion. Smith v. Hudson, 600 F.2d 60, 64 (6th Cir.), cert. dismissed, 444 U.S. 986 (1979). The moving party has the burden of showing the court that no genuine issue of material fact remains. Agristor Financial Corp. v. Van Sickle, 967 F.2d 233, 236 (6th Cir. 1992). However, Rule 56(e) states that the non-moving party has the burden of setting forth "specific facts showing that there is a genuine issue for trial," or else a judgment for the moving party will be entered.

Moreover, dismissals of complaints brought under Civil Rights Statutes are scrutinized with special attention. Brooks v. Seiter, 779 F.2d 1177, 1180 (6th Cir. 1985). A pro se complaint will be held to a less stringent standard than one drafted by an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972). Nevertheless, a court will not engage in a guessing game in order to determine the nature of the claims asserted by a pro se litigant. Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989).

### C.    Factual Record

Plaintiff, Mark E. Schaefer ("Schaefer") began his employment with the United States Postal Service ("USPS") in 1995. On July 5, 1997, Schaefer was involved in a workplace

encounter with his supervisor, Shelia Norfleet, during which she apparently subjected him to a physical attack.  (Defendant's Exhibit B).  Although Schaefer suffered no significant physical injuries in the incident, he sought mental health services and submitted a Worker's Compensation Claim based upon emotional distress.  (Defendant's Exhibit C).  His claim was referred to the Office of Worker's Compensation Programs ("OWCP") within the U.S. Department of Labor.  Id.  Plaintiff's treating physician, Dr. Jean Alce, a psychiatrist, settled upon a diagnosis of Acute Stress Disorder which she found to be causally related to Schaefer's encounter with Norfleet.  In a report of July 23, 1997, Dr. Alce opined that Schaefer was not in a condition to resume work.  She determined that his disability should be total, pending a definite improvement of his emotional status.  She recommended that Schaefer continue to receive treatment, and estimated that he could expect to recover in approximately 8 weeks.  (Defendant's Exhibit D).  OWCP accepted Plaintiff's claim of total disability based upon Acute Stress Disorder and awarded Worker's Compensation Benefits under the Federal Employees Compensation Act ("FECA"), 5 U.S.C. §8101 et. seq. (Defendant's Exhibit E).

In December 1997, OWCP sent Plaintiff a Notice of Proposed Termination of Compensation Benefits, based upon its conclusion that Plaintiff's condition was not caused by the alleged attack by Norfleet, but rather was the result of an underlying pathology. (Defendant's Exhibit F).  Two independent medical evaluations, however, yielded findings that Schaefer was suffering from post-traumatic stress disorder and depression related to the Norfleet incident.  (Defendant's Exhibits G and H).  Based in substantial part upon those evaluations, an OWCP senior claims examiner determined that Schaefer continued to suffer from residual effects of the workplace altercation, and that he was "totally disabled for all

4

work with the postal service." (Defendant's Exhibit I). Accordingly, Workers Compensation Benefits were continued in effect. (Defendant's Exhibits J and K).

Plaintiff's treating psychiatrist, Dr. Alce, submitted numerous periodic reports in which she classified him as totally disabled from all work at the postal service. (Defendant's Exhibit L). In May 2000, OWCP again proposed to reduce Schaefer's compensation benefits, based on a vocational rehabilitation evaluation containing a finding that he was able to work as a construction painter. (Defendant's Exhibit M). Schaefer objected to the reduction as inconsistent with his treating doctor's restrictions.[2] (Defendant's Exhibit N). Nonetheless, on June 28, 2000, OWCP adjusted Plaintiff's disability benefits downward. (Defendant's Exhibit O). Plaintiff's request for reconsideration was denied on November 16, 2000 (Defendant's Exhibit P), and he initiated an appeal to the Employees Compensation Appeals Board ("ECAB"). (Defendant's Exhibit Q). On April 10, 2002, the Board affirmed the OWCP decision that Schaefer could work as a construction painter despite his inability to return to his former job as a mail carrier. (Defendant's Exhibit R).

On March 1, 2001, following the notice of the Postal Service's intent to reduce his benefits, Schaefer submitted a bid in an effort to secure a position with USPS as a letter carrier. (Defendant's Exhibit S). On the same date, Dr. Alce issued a medical report containing a finding that Schaefer could return to work at the postal service without restrictions. (Defendant's Exhibit T). That report, however, reflected that Dr. Alce questioned Schaefer's ability to cooperate with co-workers, and that she could not respond "assertively" regarding Plaintiff's ability to maintain concentration and pace at acceptable

---

[2] On June 8, 2000, Dr. Alce examined Plaintiff and again reported that he was "totally disabled for usual work." (Defendant's Exhibit N).

5

levels, perform high volume work or adapt to stressful work situations. Id. When the agency pointed out the apparent inconsistency between those reservations and the conclusion that Plaintiff was able to resume postal employment (Defendant's Exhibit U), Dr. Alce issued a supplemental declaration on March 6, 2001 that "[Schaefer] should return without restrictions and perform at maximum." She wrote that Schaefer was "expected to perform at more than acceptable levels, collaborate with his co-workers, maintain his concentration and respond positively to stressful situations." (Defendant's Exhibit V). The stark and sudden change in Dr. Alce's assessment of Plaintiff's fitness for postal work prompted a review of Schaefer's medical records by Dr. George Hill (Defendant's Exhibit W), who concluded on March 9, 2001 that Schaefer was "totally and permanently disabled for any type of productive employment in the postal service now or in the future." (Defendant's Exhibit X). Although Plaintiff was the presumptively successful bidder on the open position (due to the agency's failure to consider his ongoing case with OWCP), he never actually commenced work. Upon realizing the status of his disability appeal, USPS notified Schaefer in several written communications between March 19, and May 17, 2001 that he could not be returned to work until such time as OWCP should notify the service that he was fit for full or restricted duty. (Defendant's Exhibit DDD).[3] There is no evidence that such a finding was ever made, despite written USPS inquiries to OWCP requesting its advice as to Schaefer's fitness for work. (Defendant's Exhibit EEE).

---

[3] In fact, USPS had provided the same information to Schaefer many months before his formal effort to resume his postal service job. (See p.1 of Defendant's Exhibit DDD).

Postal regulations provide that employees may be separated for disability if they can no longer perform the duties of their positions, or if it is unlikely that an on-the-job injured employee will be able to return to work at the end of a one year period of leave without pay. (Defendant's Exhibit Z, ELM Section 365.342 and Section 545.93).  The USPS notified Schaefer in a letter of March 5, 2001 of several options with respect to his separation from the postal service: 1) resignation; 2) disability retirement; or 3) retirement from USPS if eligible. (Defendant's Exhibit Y).  Schaefer failed to exercise any of the offered options.  He was administratively separated from the Postal Service effective June 8, 2001.  (Defendant's Exhibit AA).

On May 3, 2001, the postmaster at the Livonia Post Office notified Schaefer by letter that his access to the Livonia postal facilities would be restricted in the absence of personal pre-approval by the postmaster.  (Defendant's Exhibit BB).  The letter followed prior verbal instructions that Schaefer should use the front (public) entrance to access the building. (Defendant's Exhibit CC).  Similar instructions had been issued to other employees.  Id.  An arbitration hearing on a grievance filed by Schaefer with his union was scheduled to be conducted at the Livonia postal facility on August 17, 2001.  (Defendant's Exhibit DD).  The Livonia Postmaster issued written permission to Plaintiff to enter the facility, through the lobby and front office, but requested that Schaefer refrain from entering onto the workroom floor.  (Defendant's Exhibit EE).  Plaintiff, however, requested that the site of the hearing be changed (Defendant's Exhibit FF), and his request was honored.  (Defendant's Exhibit GG). The hearing was scheduled for September 19, 2001 at the Detroit Post Office.  Id.  On that date, despite Schaefer's non-appearance, the union and the USPS entered into a written settlement of Plaintiff's grievance.  (Defendant's Exhibit HH).  The agreement provided that

7

Schaefer would have until October 19, 2001 to apply for disability retirement, and further provided for the cancellation of his disability separation in the event his disability retirement application was accepted. Id.

At some point, Leonard Brown, Human Resources Manager for USPS, requested that a piece of correspondence issued from the agency to Schaefer be placed on hold until Brown had an opportunity to discuss the issues and facts discussed therein with members of USPS management who were familiar with the case. His efforts, however, were unsuccessful, and all mail addressed to Mr. Schaefer was delivered in the normal course. (Defendant's Exhibit II).

Schaefer requested USPS assistance in filing a claim for disability retirement. A Human Resources Specialist wrote to Plaintiff, on June 15, 2001, providing him with the appropriate claim forms. (Defendant's Exhibit KK). Plaintiff was also given a pamphlet containing basic information on disability retirement benefits. He was instructed to call Viola Watson in the event he required further information. Id. As part of Schaefer's disability retirement claim, Ava Brown completed standard form 3112B, "Supervisor's Statement." (Defendant's Exhibit LL). In the section of the form calling for a description of the "efforts . . . made to accommodate the employee in current position," Brown wrote "employee unable to work." Id.

### D.   Summary of Administrative Proceedings

Plaintiff initiated several EEO proceedings, which were accurately described in Defendant's primary brief, as follows:

1.      **Case No. 4J-481-0158-97**

On July 14, 1997, Schaefer contacted an EEO counselor to complain of the physical assault by Norfleet (Agency Case #4-J-481-0158-97).  (Exh MM).  Schaefer, however, voluntarily withdrew this EEOC complaint on November 19, 1997.  (Exh NN).

2.      **Case No. 4J-481-0155-00**

On July 31, 2000, Schaefer filed another EEO complaint regarding the incident with Norfleet (Agency Case #4-J-481-0155-00), this time alleging discrimination on the basis of mental disability for (1) not following work restrictions from his doctor, (2) allowing his title and benefits to be changed from letter carrier to painter, (3) not recommending a suitable workplace, and (4) violating the Postal Service's No Tolerance Policy by allowing his supervisor to violently attack him.  (Exh OO).

Without conducting an investigation, the Postal Service issued a Final Agency Decision on August 21, 2000, dismissing Schaefer's case for failure to state a claim, finding that all of his claims fell within the exclusive jurisdiction of the Federal Employment Compensation Act ("FECA"), 5 U.S.C. §8101-8151, as being related to an injury incurred in the course of employment.  (Exh PP).  Schaefer appealed this decision to the EEOC Office of Federal Operations ("OFO").  On May 31, 2002, the OFO reversed the Postal Service's decision as to all but the second claim relating to his title and benefits change and remanded the case to the Postal Service for investigation and further processing.  (Exhs QQ & RR).

An EEO investigator was assigned to the case on remand and issued a report of her findings on June 25, 2003.  (Exh SS).

9

3.    **Case No. 4J-481-0093-01**

While Case No. 4-J-481-0155-00 was still pending, Schaefer filed another EEO complaint on June 25, 2001 (Agency No. 4J-481-0093-01) alleging disability discrimination, and unlawful retaliation based on being denied use of the employee entrance at the Livonia post office and the termination of his employment through administrative separation, effective June 8, 2001.  (Exh TT).

Schaefer's subsequent complaints to the EEO based on (1) his problems with physical examination; (2) not being permitted to return to work; (3) being denied participation in employee food drive; (4) having his personal mail "pulled" without authorization; and (5) a letter sent by the Livonia Postmaster, which Schaefer believed to be a trap to get him arrested; (6) denial of retirement counseling; (7) falsifying of records by Ava Brown; (8) a message from the Livonia Postmaster left on Schaefer's brother's answering machine, and (9) problems with the processing of his EEO complaint,[4] were later consolidated with case 4J-481-0093-01.[5]  (Exh UU).

An EEO investigator was assigned to the case and issued a report of her findings on April 4, 2002.  (Exh VV).

---

[4]  This claim is the subject of a separate lawsuit brought by Schaefer against the EEOC: Schaefer v. Dominguez, Case No. 06-12824 (E.D. Mich.), filed August 2, 2006. Accordingly, it will not be addressed here.

[5]  Schaefer's EEO claim concerning the union's handling of Schaefer's grievance - - in particular, its refusal to change hearing locations upon Schaefer's request - - was not consolidated with his prior case.  Although it was initially included (Exh WW), after Schaefer submitted more-detailed complaints on the same topic, it was treated as a separate claim and assigned number 4J-481-0177-01.  (Exh XX).  Moreover, although Schaefer's EEO request on this issue was initially erroneously treated as a formal EEO complaint, Schaefer was notified of the error and invited to submit a formal EEO complaint.  (Exh YY).

4.    **Proceedings before ALJ**

Upon Schaefer's request, cases 4-J-481-0155-00 and 4J-481-0093-01 were consolidated for hearing before an EEOC Administrative Law Judge.  Without the need for a hearing, the ALJ rendered a decision on November 3, 2003 in both cases dismissing all of Schaefer's claims.  (Exh A).  Schaefer timely appealed to the OFO, which upheld the ALJ's decision on September 23, 2005.  (Exh ZZ).  The OFO denied reconsideration on March 28, 2006.  (Exh AAA).  Schaefer thereafter filed this case in federal court.

E.    **Analysis**

Plaintiff's 62 page pro se Complaint is difficult to comprehend and impossible to briefly summarize.  It makes a mockery of the Fed.R.Civ.P. 8(a) requirement of "a short and plain statement" of the grounds upon which the court's jurisdiction depends and the grounds for the relief sought.  The Complaint presents ten "issues," all of which relate to Plaintiff's former status as an employee of the Defendant and the events and proceedings leading to the termination of his employment and his current status as a disability benefits recipient. In my judgment those claims are fairly characterized in the brief supporting Defendant's Motion to Dismiss and/or for Summary Judgment as follows:

> (1) Whether Schaefer was denied a reasonable accommodation for his mental disability when he was not returned to work at the postal service on June 28, 2000 or March 1, 2001;
>
> (2) Whether Schaefer was improperly discharged on the basis of his mental disability when he was removed from the postal service under an administrative disability separation effective June 1, 2001;

11

(3) Whether Schaefer was discriminated against because of his mental disability and/or in retaliation for prior EEO activity when:

a)  He was physically assaulted by his supervisor on July 5, 1997;

b)  He was not permitted to return to work at the postal service on March 1, 2001;

c)  He was denied use of the employee's entrance at the Livonia Postal Facility;

d)  He was not allowed to participate in the postal food drive;

e)   His personal mail was pulled without authorization;

f) His union representative refused to change the location of Schaefer's arbitration hearing on June 15, 2001;

g) The Livonia Postmaster sent an ambiguous letter on June 20, 2001 to trap Schaefer into a federal arrest;

h) He was denied a meeting for retirement counseling between June 15-22, 2001.

Defendant's Brief, pages 1-2.

Plaintiff cites numerous federal statutes in support of his various claims.  Those statutes include Title VII of the Civil Rights Act of 1964 (Title VII), as amended (42 U.S.C. §2000e et seq.), the Americans With Disabilities Act ("ADA") (42 U.S.C. §12131 et seq.), the Federal Tort Claims Act ("FTCA") (28 U.S.C. §2671 et seq.) and the Rehabilitation Act of 1973 (29 U.S.C. §701 et seq.).

The gravamen of Schaefer's Complaint, however, is handicap discrimination, and he is a benefits recipient under the Federal Employees Compensation Act ("FECA"), 5 U.S.C.

12

§8101 et seq.   Authority to administer, interpret and enforce the provisions of FECA, including the grant, denial or modification of compensation awards, is vested exclusively in the Office of Worker's Compensation Programs ("OWCP") through the Secretary of Labor. 20 C.F.R. §10.0(b), 10.1; 5 U.S.C. §8128.   FECA coverage of an injury or disability precludes an FTCA claim arising from the same condition.  McDaniel v. United States, 970 F.2d 194 (6th Cir. 1992).  Title VII does not directly pertain to claims of discrimination based upon disability, although procedures developed in its application have been adopted in the enforcement of disability discrimination claims under other statutes.   The ADA does proscribe handicap discrimination, but federal employees may not proceed under that statute.  Rather, the Rehabilitation Act provides the remedy for federal employees alleging disability discrimination.  See Peltier v. United States, 388 F.3d 984, 989 (6th Cir. 2004).

Title 5 of the Rehabilitation Act of 1973, 29 U.S.C. §701 et seq., prohibits federal agencies from discrimination and retaliation in employment against disabled persons.  Hiler v. Brown, 177 F.3d 542, 545 (6th Cir. 1999); Gaines v. Runyon, 107 F.3d 1171, 1175 (6th Cir. 1997).   Under the Rehabilitation Act, an aggrieved federal employee is entitled to the "remedies, procedures and rights" set forth in Title VII.  Hiler, 177 F.3d at 545.  In addition, the regulations governing ADA claims are applicable to employment discrimination actions brought under the Rehabilitation Act.  Burns v. City of Columbus, 91 F.3d 836, 842 (6th Cir. 1996).  A prima facie case under the Rehabilitation Act requires a Plaintiff to demonstrate that: 1) he is a disabled person under the Act; 2) he is otherwise qualified; and 3) he was denied a reasonable accommodation by reason of his disability.  Peltier v. United States, 388 F.3d 984, 989 (6th Cir. 2004).

FECA, and particularly Title 5 U.S.C. §8128, confers upon the Secretary of Labor the authority to "review an award for or against payment of compensation at any time on his own motion or on application." The Secretary may end, decrease or increase the compensation previously awarded under FECA. The Act further provides that:

> (b) the action of the Secretary or his designee in allowing or denying a payment under this sub-chapter is - -
>
>> (1) final and conclusive for all purposes and with respect to all questions of law and fact; and
>>
>> (2) not subject to review by another official of the United States or by a court by mandamus or otherwise.

5 U.S.C. §8128(b). Based upon that provision, Defendant argues that this court lacks jurisdiction to grant the relief sought by Plaintiff because to do so would necessarily require a finding that the Secretary of Labor's assessment of Plaintiff's disability was erroneous. Such a holding, Defendant contends, would contravene the FECA prohibition against judicial review of compensation decisions. (Defendant's Brief, pps. 14-15).

The majority of courts which have considered the issue have rejected the proposition that a FECA determination by the Secretary of Labor or his designee automatically deprives a federal court of subject matter jurisdiction over all civil rights claims based upon the same injury. Many decisions adopt the reasoning of Miller v. Bolger, 802 F.2d 660 (3rd Cir. 1986), in which the court decided that a FECA decision did not preclude a Title VII action in which a disability benefits recipient asserted that his injuries resulted from a conspiracy to harass him in retaliation for his support of black employees. The Third Circuit reasoned that FECA and Title VII created separate remedies for distinct types of injuries. The same court later affirmed a district court decision that receipt of FECA benefits did not absolutely preclude

14

a disability discrimination claim under the Rehabilitation Act involving the same impairment. Taylor v. Secretary of the Navy, 852 F.Supp. 343 (E.D. PA 1994), aff'd 61 F.3d 896 (3rd Cir. 1995) (Table).   Other federal courts have reached similar conclusions.   See, Reidy v. Runyon, 971 F.Supp. 760 (E.D. NY 1997).

A U.S. District Court in North Dakota held that FECA did preclude its adjudication of a benefits recipient's failure to accommodate a claim under the Rehabilitation Act.   The Plaintiff had alleged that the Postal Service failed in its duty of accommodation by refusing to alter the requirements of an alternative position which the Department of Labor had specifically determined under FECA to be "suitable work."   In affirming the district court's decision, the United States Court of Appeals for the Eighth Circuit took pains to observe that the district court had not determined that all discrimination claims are barred under FECA, and had permitted the Plaintiff to pursue disparate treatment and retaliation claims under the Rehabilitation Act.   The only issue over which the court found itself to be without jurisdiction was one which was expressly committed to the discretion of the Secretary of Labor under the FECA.   Meester v. Runyan, 149 F.3d 855, 856-57 (8th Cir. 1998), cert. denied, 526 U.S. 1144 (1999).

I find the reasoning of the Meester case persuasive, and I am satisfied that federal court jurisdiction over handicap-based civil rights claims is not automatically precluded by FECA claims based upon the same injury.   Federal court jurisdiction is precluded, however, when the court is called upon to adjudicate an issue which has been committed to the discretion of the Secretary of Labor under FECA and specifically addressed in the determination of a disability claim.   This concept has found approval in our circuit.   See

15

Luellen v. Henderson, 54 F.Supp. 2ⁿᵈ 775, 781-82 (W.D. Tenn 1999) (citing Woods v. Runyon, 64 F.3d 664, 95 WL 496655 (6th Cir. 1995)).

Plaintiff Schaefer filed an FECA claim in 1997 in which he asserted total disability to perform his former job as a letter carrier.  His claim was accepted and he received benefits based upon total disability for any type of work whatsoever.  (Defendant's Exhibit E).  When OWCP suggested, in December 1997, that his disability had ceased (based in part upon Dr. Alce's failure to provide a detailed assessment of Plaintiff's condition),[6] Schaefer disagreed and sought reconsideration of the OWCP proposal to terminate his benefits.  (Defendant's Exhibit I, p. 2).  Plaintiff submitted a report from James F. Zender, PhD, to support his assertion of continued total disability.  Id.  He was then examined by Dr. Dan G. Guyer, a board certified psychiatrist, whose report led the OWCP to conclude, in August 1998, that Plaintiff was "totally disabled for all work with the Postal Service."  (Defendant's Exhibits H and I).

In addition to providing for disability benefits, FECA requires federal employers to allow injured employees to return to their old positions or, if they can no longer perform their original duties, to offer them reasonable alternative jobs.  5 U.S.C. §8151(b); see also Meester v. Runyon, 149 F.3d 855 (8th Cir. 1998).  Plaintiff was advised in writing that he was expected to return to work (including restricted duty or part-time employment, if available) when he was no longer totally disabled.  (Defendant's Exhibit J).  Dr. Alce, however, submitted a series of reports to the Department of Labor that Plaintiff was "totally disabled for (his) usual work."  (Defendant's Exhibit L).

---

[6]  See Defendant's Exhibit F.

16

On May 25, 2000, the OWCP issued a second Notice of Proposed Reduction of Compensation to Plaintiff, based in great part upon a form report from Dr. Alce on March 16, 1999. (Defendant's Exhibit M). Dr. Alce opined that Schaefer could perform no work with the United States Postal Service, no work involving interaction in a public setting, and no work with supervision, and that he was unable to respond appropriately to persons in authority, to maintain concentration and pace at acceptable levels, to perform high volume work, or to adapt to stressful work situations. Id. Dr. Alce's assessment further noted, however, that Plaintiff was partially able to participate actively in group/team activities, to cooperate with co-workers, and to organize work and complete tasks without supervision. She stated that Schaefer was capable of communicating clearly with others face to face as well as by telephone. She also opined that he might benefit from rehabilitation. Id.

Based upon Dr. Alce's report, Plaintiff's file was referred to a rehabilitation counselor. The initial goal was to obtain employment for Schaefer outside of the Postal Service. In May of 2000, however, the rehabilitation file was closed because an agreement regarding Schaefer's vocational rehabilitation plan could not be reached. Nonetheless, the counselor identified two positions in the private sector which were found to be consistent with Plaintiff's capabilities. Ultimately, the OWCP determined that the position of a construction painter was within the medical restrictions outlined by Dr. Alce, and vocationally suitable to Schaefer, based upon his educational background, previous work experience and transferrable skills. Because a labor market survey determined that full time construction painting jobs were available, the office proposed to reduce Plaintiff's compensation. (Defendant's Exhibit M).

17

Plaintiff again vigorously opposed the proposal to reduce his status as a totally disabled person. (Defendant's Exhibit N). When OWCP did reduce his benefits (Defendant's Exhibit O),[7] he appealed to the Department of Labor Employees Compensation Appeals Board ("ECAB"). In a letter of January 17, 2001, he emphasized Dr. Alce's findings that he was unable to respond appropriately to authority, interact in public situations, organize and complete tasks with supervision, perform high work levels and adapt to stressful situations. (Defendant's Exhibit Q). He urged the board to return him to his former status as a totally disabled person. Id. In a decision on April 10, 2002, the board upheld the benefits reduction, accepting the OWCP conclusion that Schaefer's condition precluded his return to his usual job as a letter carrier, but not his ability to work as a construction painter. (Defendant's Exhibit R).

Approximately one month after initiating his appeal to ECAB, Plaintiff submitted a bid on an open letter carrier position at the Livonia Post Office. On March 1, 2001, Dr. Alce submitted a form report to OWCP that Schaefer was able to resume his regular work, without indicating a need for restrictions. The report, however, indicated doubt on her part that Plaintiff could "cooperate with co-workers," and stated that she was unable to "respond assertively" with regard to his ability to maintain concentration at acceptable levels, perform high volume work and adapt to stressful situations. (Defendant's Exhibit T). On March 6, 2001, OWCP noted the apparent contradictions and asked Dr. Alce if Plaintiff could work full time with no restrictions whatsoever. (Defendant's Exhibit U). On the same day, Dr.

---

[7] The decision explicitly provided that Plaintiff remained "disabled to perform [his] date of injury position as a city letter carrier . . .." (Defendant's Exhibit P).

Alce wrote a responsive note stating that Schaefer could return to work without restriction and perform at maximum levels.  (Defendant's Exhibit V).

On March 5, 2001, one day before the exchange of communications described above, Leonard L. Brown, the Human Resources Manager at the Livonia Post Office wrote to Plaintiff that the medical documentation from his treating physician indicated permanent limitations which restricted his ability to perform the letter carrier position.  Based on that conclusion, Brown outlined three retirement alternatives.  (Defendant's Exhibit X).  Upon receipt of Dr. Alce's March 6, 2001 note declaring, but not explaining, Plaintiff's ability to return to work without restrictions, the Postal Service notified Plaintiff in writing that it could not overrule the OWCP decision, and that his request to return to work must be deferred until the completion of the disability appeal process and the return of his case to the jurisdiction of the Cleveland, Ohio OWCP District Office.  (Defendant's Exhibit DDD).  On March 19, 2001, a Postal Service Human Resource Analyst, Debra A. Benedict, wrote to ECAB regarding Dr. Alce's sudden and unsupported change of opinion.  Benedict requested that the Board review the documentary record and advise whether it considered Plaintiff to have "no residuals to the accepted condition."  (Defendant's Exhibit EEE).  On April 19, 2001, Benedict explained to Plaintiff in a letter that his case was before ECAB, and that the Department of Labor would notify the Postal Service "if there is a change in the status of your continuing benefits" and would "request a job offer if medically indicated."  (Defendant's Exhibit DDD, p. 4).[8]  In April and May 2001, Plaintiff was sent additional written notices that the USPS could not take action on his job application until such time as OWCP determined

---

[8]  Similar advisements had been written to Plaintiff on October 4, 2000, March 19 and March 30, 2001.  (Defendant's Exhibit DDD, pp. 2-4).

that he was fit for return to full <u>or</u> restricted duty.  <u>Id</u>; pp. 5,6.  There is no evidence that OWCP has ever modified its finding that Plaintiff is unfit for any employment with the Postal Service.

I am satisfied that Plaintiff's handicap discrimination/failure to accommodate claim under the Rehabilitation Act must be dismissed.  OWCP determinations of law and fact regarding compensation for federal disability status are not reviewable.  5 U.S.C. §8128(b); <u>Lindahl v. Office of Personnel Management</u>, 470 U.S. 768, 780 n.13 (1985).  Because FECA makes the OWCP determinations conclusive "with respect to all questions of law and fact," its determination that Plaintiff is disabled from any work within the Postal Service is not subject to this court's review.  Schaefer cannot collaterally attack the correctness of that determination in federal court.  <u>Luellen v. Henderson</u>, 54 F.Supp. 2d 775, 781-82 (W.D. TN 1999); <u>Woods v. Runyon</u>, 64 F.3d 664 (6th Cir. 1995), <u>cert denied</u>, 516 U.S. 1060 (1996).

Even if this court could properly exercise jurisdiction over Plaintiff's handicap discrimination/failure to accommodate claim, I find that Defendant is entitled to summary judgment.  The only Defendant in this case is the Postmaster General.  The only action taken by the Defendant was to refrain from acting upon Plaintiff's employment application without OWCP guidance and approval.  It is important to note that USPS was bound no less than Plaintiff was by the OWCP decision regarding Schaefer's fitness for employment in any capacity by the Postal Service.  Defendant sought guidance from OWCP as to whether its position on Schaefer's fitness for employment had changed.  There is no evidence, however, that the OWCP assessment ever changed, much less that it communicated any such change to the Defendant.  Because USPS cannot act in Federal Employees Compensation Act matters except in conformity with OWCP determinations as to a worker's

20

ability to perform, there was no adverse action by USPS in failing to return Plaintiff to work as a letter carrier. Without such an adverse action Schaefer is not "aggrieved" and therefore cannot establish a <u>prima facie</u> case of discrimination. <u>Woods v. Runyan</u>, 64 F.3d 664 (6th Cir. 1995), <u>cert. denied</u>, 516 U.S. 1060 (1996).

As explained in the <u>Woods</u> decision, Schaefer did suffer an adverse employment action by USPS when his employment was eventually ended. For purposes of this action, however, Plaintiff has failed to show that he was qualified for the mail carrier position which he was denied. In rendering its decision to award him benefits, the OWCP determined that Schaefer was no longer qualified for any work with the Postal Service. "[W]hether an employee is qualified for a compensated OWCP position is an OWCP decision. See, 5 U.S.C. §8128(b). "In this case, the OWCP determined that [Schaefer] was not qualified, and that decision is not subject to review. See, 5 U.S.C. §8128(b)(1). Thus, because [Schaefer] is not qualified for any position at issue, [he] failed to establish a prima facie case of discrimination." <u>Wood v. Runyan</u>, 64 F.3d 664 (6th Cir. 1995) (citing <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973).

The <u>Woods</u> case provides yet another basis for dismissal of Plaintiff's failure to accommodate claim. Even if it was assumed that Schaefer made out a prima facie case of discrimination, summary judgment for Defendant is warranted because Plaintiff has offered no evidence whatsoever to support a claim of pretext for discrimination. The Defendant has articulated a legitimate, non-discriminatory reason for its actions, i.e. the lack of guidance from OWCP regarding Plaintiff's fitness for return to full or partial duty as a mail carrier. All other matters were decided by OWCP. As the Postal Service was bound by the OWCP determination that he was medically unfit for any postal employment, its justification for

failing to rehire Plaintiff was legitimate and non-discriminatory, Plaintiff does not meet the burden of proving that the failure to recall him to work was pretextual. Id. (Citing Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 254-56 (1981)). For all of the above reasons, the claims of failure to provide reasonable accommodation, as alleged in Counts 1 through 3 of Plaintiff's Complaint should be dismissed.

I am persuaded that the balance of the claims asserted in Counts 2 and 3 of the Complaint must also be dismissed. Count 2 asserts claims under Title VII that Schaefer was denied certain benefits incidental to employment by the Postal Service, such as step increases and the right to the use of employee entrance doors. It is clear, however, that Plaintiff has been determined by OWCP to be unfit for Postal Service employment, that he has been administratively separated from the Postal Service based upon that status and his own failure to elect among alternative dispositions. He has continued to receive FECA benefits premised upon the OWCP determination that he remains unfit for any form of Postal Service work. Plaintiff alleges other violations of Title VII, including his exclusion from participation in the Post Office Charity Food Drive and his being told that he is not an employee.

As an initial matter, Title VII does not proscribe employment discrimination based on handicap, and Plaintiff does not allege any other form of discrimination. Even if Title VII applied in this case, the balance of the claims in Count 2 would be subject to dismissal as de minimis. A "bruised ego" will not constitute an adverse employment action under Title VII. White v. Burlington Northern, 364 F.3d 789, 797 (6th Cir. 2004); Bowman v. Shawnee Univ., 220 F.3d 456, 462 (6th Cir. 2000). "If every low evaluation or other action by an employer that makes an employee unhappy or resentful were considered an adverse action,

Title VII would be triggered by supervisor criticism or even facial expressions indicating displeasure." Primes v. Reno, 190 F.3d 765, 767 (6th Cir. 1999). In the instant case, it is clear that any material change in Plaintiff's employment status is directly attributable to the several determinations by OWCP and ECAB that he is psychologically disabled from any form of Postal Service employment. Plaintiff's remedy for establishing his fitness for postal work lies in seeking a change in the Secretary of Labor's disability determination under FECA.[9]

Count 3 of the Complaint asserts violations of Title VII, the ADA and the Rehabilitation Act. As stated above, Title VII does not proscribe handicap-based employment discrimination, and Plaintiff has not alleged any other form of discrimination. While the ADA does prohibit handicap-based discrimination, Plaintiff's recourse, as a federal employee, is available only under the Rehabilitation Act. Peltier v. United States, 388 F.3d 984, 989 (6th Cir. 2004). As stated above, relief under that statute is foreclosed by FECA's prohibition against court review of the Secretary of Labor's determination as to Plaintiff's disability to perform any work for the Postal Service. In addition, Schaefer has failed to establish a prima facie case.

To the extent that Count 3 asserts a claim that USPS denied Plaintiff employment in retaliation for his EEO activity, it must fail. A valid claim of retaliation requires a showing by the employee that: 1) he engaged in a legally protected activity; 2) the activity was known to the defendant; 3) he was subjected to an adverse employment action; and 4) the adverse action occurred because of the protected activity. McClain v. Northwest Cmty. Corr. Ctr.,

---

[9] "The Secretary of Labor may review an award for or against payment of compensation at any time on his own motion or on application." 5 U.S.C. § 8128.

440 F.3d 320, 335 (6th Cir. 2006). In this case, Schaefer has failed to produce evidence sufficient to support the reasonable inference that he was denied re-employment as a consequence of his EEO activities. A Plaintiff must produce sufficient evidence to support a reasonable inference that the adverse action would not have been taken had the Plaintiff not engaged in protected activity. Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000). Causation can be inferred from indirect or circumstantial evidence, such as evidence that the Defendant treated the Plaintiff differently from similarly situated employees or that the adverse action was taken shortly after the Plaintiff's exercise of protected rights. Id. "To survive summary judgment, the evidence of causation must be 'sufficient to raise the inference that [the Plaintiff's] protected activity was the likely reason for the adverse action.'" Scott v. Potter, 2006 WL 1524742 (6th Cir. 2006) (citing Zanders v. Nat'l R.R. Passengers Corp., 898 F.2d 1127, 1135 (6th Cir. 1990). A plaintiff's subjective beliefs that employment related events were retaliatory cannot establish a prima facie case. Hein v. All American Plywood Co., 232 F.3d 482, 488-89 (6th Cir. 2000); Mitchell v. Toledo Hosp., 964 F.2d 577, 584 (6th Cir. 1992). Mere subjective beliefs cannot support a retaliation claim. Travis v. Board of Regents of the University of Texas, 122 F.3d 259, 266 (5th Cir. 1997); Jones v. BASF Corp., 1999 U.S. Dist. Lexis 5153 (W.D. Mich. 1999). In this case, Schaefer's claims are supported only by his conjectural personal beliefs. He has repeatedly asserted the perception that Defendant's various acts with respect to him were motivated by discriminatory and/or retaliatory animus. There is no direct evidence of retaliatory intent on the part of the Defendant, and the circumstantial evidence is extremely weak. Plaintiff, as the non-moving party, must present more than just some evidence of a disputed issue. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

24

"[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the [non-moving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986). I find nothing in the record which creates an issue of material fact.

Plaintiff's 1997 EEO Complaint was withdrawn at his own request four months after it was filed. It is illogical to conclude that Defendant retaliated against him for that action by denying him re-employment in 2001. This is especially so in light of the fact that Defendant was legally bound by the OWCP and ECAB determinations that Plaintiff was mentally unfit for any form of Postal Service employment. Plaintiff's 2000 EEO Complaint dealt with specifically with the Norfleet incident which gave rise to his disability claim and was determined to be the cause of his disability. It was the Plaintiff himself who initiated proceedings under FECA to establish his lack of capacity for Postal Service work. He was successful in obtaining precisely that determination from OWCP. That decision, as upheld by ECAB was legally binding upon Defendant, and it simply does not follow that USPS compliance with the requirements of FECA was somehow "retaliatory." Finally, Plaintiff's June 2001 EEO action contains essentially the same allegations against Defendant as appear in the Complaint in this case. It is absurd to suggest that actions which occurred prior to the filing of the 2001 EEO Complaint could have been taken in "retaliation" for its filing. A plaintiff may be free to jump to conclusions unsupported by the evidence. This court is not. In the absence of evidentiary support in the record, Mr. Schaefer's claims of retaliation must fail because he has failed to make out a <u>prima facie</u> case that any action by Defendant with respect to him was taken because of his protected EEO activity.

25

Counts 4 through 10, inclusive, of Plaintiff's Complaint must also be dismissed.  Each of those claims is specifically premised upon the provisions of the Federal Tort Claims Act.  Counts 4, 10 and a portion of Count 9 assert claims based directly upon the incident with Plaintiff's supervisor which gave rise to his disability.  It is clear, however, that a plaintiff who has availed himself of the remedies available under FECA may not maintain a second action under the FTCA arising out of the same injury, even if FECA did not afford the employee all of the elements of damage that he could have obtained under FTCA.

> FECA's exclusive-liability provision was enacted in substantially its present form in 1949 . . ..  It was designed to protect the government from suits under statutes, such as the Federal Tort Claims Act, that had been enacted to waive the government's sovereign immunity.  In enacting this provision, Congress adopted the principal compromise - the "quid pro quo" - commonly found in Worker's Compensation litigation: employees are guaranteed the right to receive immediate, fixed benefits, regardless of fault and without need for litigation, but in return they lose the right to sue the government.

Lockheed Aircraft Corp. v. United States, 460 U.S. 190, 193-94 (1983).  Thus, "once an injury falls within the coverage of FECA, its remedies are exclusive and no other claims can be entertained by the Court."  Jones v. Tennessee Valley Authority, 948 F.2d 258, 265 (6th Cir. 1991); see also, Saltsman v. United States, 104 F.3d 787, 790 (6th Cir. 1997).  It is beyond serious question that each claim based upon the assault of Plaintiff by Norfleet is entirely precluded by reason of Plaintiff's prior claim under FECA.

I conclude that the balance of Plaintiff's claims (Counts 5 through 8 and a portion of 9) are each insufficient to state a claim and/or factually unsupported.  Count 5 alleges the seizure and/or delay of Plaintiff's mail by USPS employees.  Defendant's motion concedes that an effort was made to delay delivery of a single letter written to Plaintiff by Leonard

Brown, a Human Resources manager for the Postal Service.  According to Brown's Affidavit, however, that effort was unsuccessful, and all mails addressed to Plaintiff were delivered in the normal course of business.  (Defendant's Exhibit II).  The Defendant has also supplied a copy of the postal regulation permitting a federal agency to recall mail sent by it, without submitting an official recall order.  (Defendant's Exhibit JJ).  Plaintiff has produced no evidence to contradict Brown's Affidavit or the proffered regulation.  His subjective assertion that items of mail directed to him (and others) were delivered unacceptably late is insufficient to create a genuine issue of material fact sufficient to forestall summary judgment on the issue of intentional interference with his mail.

Count 6 of the Complaint is particularly obtuse.  Plaintiff appears to allege violations of his rights under a collective bargaining agreement (CBA), and he attempts to assert the Defendant's allegedly wrongful conduct as a violation of the Federal Tort Claims Act. Schaefer mixes into Count 6 allegations of inadequate representation of his interests under the CBA by union representatives (who are not parties to this action), and assertions that his rights under the ADA were infringed.  The only factual allegation against the named Defendant appears to be that USPS personnel "refused to explain the details" regarding the restriction of Plaintiff from Post Office facilities.  The Affidavit of James Cappelli, who issued the restriction, states that he restricted Plaintiff only from the work floor, and that Schaefer had been told to use the front (public) entrance of the building, but refused to comply, thus prompting the written restriction from the premises.  Plaintiff was granted permission to enter the building for a grievance hearing, but declined to do so.  Restriction from the work floor was reasonable because Plaintiff was not in an active work status.  Restriction from the building was reasonable because Plaintiff refused to comply with verbal requests to restrict

his presence to the public spaces.  I conclude that no reasonable fact finder could return a

verdict for Schaefer on Count 6 based on the restriction of access to the building.

Count 6 appears to be primarily a criticism of the manner in which the Union

represented Plaintiff's interests on a grievance under the CBA.  Even if the count is

interpreted as a joint criticism of the Defendant and the Union, the concept of a "tortious"

breach of contract is not well accepted.  Certainly, no Michigan court has ever recognized

such a claim.

> The law in Michigan is well settled that an action in tort requires
> a breech of duty separate and distinct from a breech of contract.
> Haas v. Montgomery Ward and Company, 812 F.2d 1015 (6th
> Cir. 1987);  Quin v. Massachusetts Mutual Life Insurance
> Company, 409 Mich. 401 (1980); Hart v. Ludwig, 347 Mich. 559
> (1957); Brewster v. Martin Merritta Aluminum Sales, Inc., 145
> Mich.App. 641 (1985).  In Hart, Michigan's highest court noted
> the distinction between the legal duty which arises by operation
> of a contract and the fundamental concept of a legal duty to
> avoid conduct which creates liability in tort. '[I]f a relation exists
> which would give rise to a legal duty without enforcing the
> contract promised itself, the tort action with lie otherwise not.'
> Hart, 347 Mich. at 565, 79 N.W. 2nd at 898 (quoting W. Prosser,
> Handbook of Torts, Section 33 at 205 (1st Edition 1941)).
>
> In Brewster, the plaintiff's cause of action arose from the breech
> of a contractual obligation.  The court held that the plaintiff's
> cause of action was in contract, not in tort because '[a]
> relationship did not exist . . . which would give rise to a legal
> duty without enforcement of the contract promise itself.'
> Brewster, 145 Mich.App. at 668, 378 N.W. 2nd at 569.  In the
> present case, Defendant's duty to [Plaintiff] was a function of
> the contract between the parties.  In the absence of this
> contract, the harm [Plaintiff] complains of would not exist.

Brock v. Consolidated Biomedical Labs, 817 F.2d 24, 25 (1987).  If this Plaintiff seeks to

assert a cause of action under a collective bargaining agreement, he may certainly do so

upon meeting all applicable jurisdictional and procedural prerequisites.  I am satisfied,

2:06-cv-12735-BAF-DAS   Doc # 27   Filed 01/17/07   Pg 29 of 31   Pg ID 2126

however, that no action under the FTCA may be derived from this Defendant's alleged breach of Plaintiff's rights under a CBA.

Count 7 complains that Plaintiff was denied face to face meetings for purposes of retirement counseling. Defendant has provided evidence, however, demonstrating that Plaintiff was sent the documents and information necessary to the filing of a disability retirement claim on June 15, 2001. (Defendant's Exhibit KK). That evidence reflects that Plaintiff was also provided the means for telephonic contact with USPS in the event he needed further information. The record further establishes that Plaintiff was granted until October 19, 2001 to apply for disability retirement, and that his disability separation would be held in abeyance until a final OPM decision. (Defendant's Exhibit HH). Plaintiff has not demonstrated that the information made available to him was inadequate to his needs, or that he was in any other manner prevented from completing a disability retirement application. Nor has he demonstrated a legal right to face to face counseling sessions.

Count 8 alleges interference by USPS with the EEOC process, misrepresentation, deceit and interference with contract rights. The Count consists primarily of a four and one-half page run-on sentence alleging numerous acts of procedural obstruction, interference and/or discouragement of Plaintiff's efforts to pursue his EEO claims. Most of those allegations are directed toward Caroline Price, EEO Dispute Resolution Manager and/or Ruby Spencer, EEO Dispute Resolution Specialist. Both Price and Spencer have submitted affidavits denying any effort to disrupt or discourage Plaintiff's EEO activity. (See, Defendant's Exhibit VV, pages 16-17). I agree with Defendant that the alleged acts, viewed in isolation or in totality, do not constitute a materially adverse employment action, and that

29

such conduct would not dissuade any reasonable employee from making or supporting a charge of discrimination.

Even if an FTCA action could be supported by Plaintiff's allegations, he has failed to name the appropriate party defendant.  It is well established that the United States, rather than the responsible agency or employee, is the proper party-defendant in a lawsuit brought under the FTCA.  McEntee v. Henderson, 154 F.Supp. 2nd 1286 (S.D. Ohio 2001) (citing Allgeier v. United States, 909 F.2d 869, 871 (6th Cir. 1990).  The Defendant in this case simply is not the proper party to respond in damages under the FTCA.

For all of the above reasons, I recommend that Plaintiff's Complaint be dismissed.

## III.   NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. Section 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  United States v. Walters, 638 F.2d 947 (6th Cir. 1981), Thomas v. Arn, 474 U.S. 140 (1985), Howard v. Secretary of HHS, 932 F.2d 505 (6th Cir. 1991).  Filing of objections that raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Smith v. Detroit Federation of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987), Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall not be more than five (5) pages in

length unless by motion and order such page limit is extended by the Court.  The response

shall address specifically, and in the same order raised, each issue contained within the

objections.


s/Donald A. Scheer
DONALD A. SCHEER
UNITED STATES MAGISTRATE JUDGE


DATED: January 17, 2007

_____

## CERTIFICATE OF SERVICE

I hereby certify on January 17, 2007 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically.  I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on January 17, 2007.  **Mark E. Schaefer.**

s/Michael E. Lang_____
Deputy Clerk to
Magistrate Judge Donald A. Scheer
(313) 234-5217